UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMI B. TODD,<br>　　　　Plaintiff,<br>　　v.<br>MICHAEL J. ASTRUE,<br>　　　　Defendant. | Case No.  10-cv-01381-KAW<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>Dkt. Nos. 26 & 29 |

Plaintiff Jami B. Todd seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for further proceedings. Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court denies Plaintiff's motion for summary judgment, and grants Defendant's cross-motion for summary judgment.

## I.  BACKGROUND

On February 4, 2009, Plaintiff Jami B. Todd filed a Title XVI application for Supplemental Security Income ("SSI") Benefits. Administrative Record ("AR") 78-80. Plaintiff's application alleges a disability onset date of approximately January 1, 2004. AR 78. Plaintiff's claim was denied on March 6, 2008. AR 35. Plaintiff filed a Request for Reconsideration on May 1, 2008. AR 43. Plaintiff's Request for Reconsideration was denied on September 26, 2008. AR 36, 44-48. A hearing was held before Administrative Law Judge Timothy C. Terrill on October 7, 2009. AR 19-34.

Plaintiff is fifty-six years old. She is unmarried and lives alone. AR 78, 124. Plaintiff has not been engaged in substantial gainful activity for more than 20 years. AR 23, 150. Plaintiff

indicated in a disability report that she stopped working on January 1, 2004, because she "was raped and have [sic] major depression." AR 91. At the hearing, Plaintiff testified that she was raped during 2002. AR 26. During the past 15 years, Plaintiff's employment was limited to occasionally babysitting for "an hour or two." AR 24. Plaintiff's counsel clarified that the indications in the file that Plaintiff worked in the customer service were inaccurate, and that any customer service employment was actually her husband working rather than her. AR 23.

Plaintiff has a history of substance abuse, and reported having abused alcohol, cocaine, and methamphetamine. AR 26-27. Plaintiff testified that she is now sober and attends Alcoholics Anonymous ("AA") meetings. AR 26. Plaintiff also has a medical marijuana card and uses marijuana daily to treat her anxiety, instead of her prescribed anxiety medications. AR 13, 27-28. She also has a dog, who serves as her service animal, which helps with her anxiety.[1]

In January 2007, Plaintiff had an MRI, which showed a meniscus tear in her right knee. AR 151-52. Plaintiff testified that her left knee also had a meniscus tear. AR 30, 158.

From March 2007 through August 2009, Plaintiff attended sessions with counselor Lilo Dixon. AR 155-56, 305-14. Mr. Dixon's counseling notes from Plaintiff's sessions are generally limited to a few sentences describing Plaintiff's subjective complaints. AR 307-14. These notes do not include any mental evaluations nor do they refer to any diagnostic testing. *Id.* In July 2008, Mr. Dixon reported that Plaintiff's "Current Mental Status" was pleasant but fearful, and that she was anxious and confused and had difficulty remembering and concentrating. AR 306. Mr. Dixon listed Plaintiff's present diagnosis to include major depression (severe, without psychosis), Post-Traumatic Stress Disorder ("PTSD"), Attention Deficit Disorder, and Substance Abuse in Full Remission. *Id.*

In May 2007, Plaintiff began seeing psychiatrist Tamar Seiver, M.D., at the Marin Community Clinic. *See* AR 159. Plaintiff's diagnosis at that time was PTSD and Major Depression. *Id.* In an August 1, 2007 letter addressed "To Whom it May Concern," Dr. Seiver stated that he treated Plaintiff and that she had an unspecified "illness" that rendered her "unable

---

[1] Plaintiff testified that her dog was not originally procured as a service animal, but rather a pet. AR 25. Dr. Siever, Plaintiff's psychiatrist suggested that she use her pet as a service animal. *Id.*

to work for at least the next twelve months." AR 157.  Dr. Seiver provided no basis for his temporary disability diagnosis.

On March 6, 2008, State agency psychiatrist Lon Gottschalk, M.D., reviewed the record and opined there was insufficient evidence of a mental impairment because Plaintiff had been non-cooperative. AR 225-35.

Progress notes from Marin Community Clinic from January through August 2008, showed that Plaintiff sought treatment for an infected finger, eczema, acid reflux, a dental infection, asthma, neck, back and knee pain, and fatigue. AR 163, 240-50.  She was prescribed medication, including Prozac and Wellbutrin, and was attending AA meetings. AR 163, 240-50. Internist Erik Schten, M.D., examined Plaintiff and described her as appearing "well" and having some knee tenderness, and referred her to an orthopedist for her complaints of knee pain. AR 243, 163, 248.

On July 8, 2008, Morton Felix, Ph.D., performed a mental status evaluation of Plaintiff for her complaints of concentration and difficulty focusing. AR 299-301.  Dr. Felix did not have any medical records to review in connection with the evaluation. AR 299.  Plaintiff reported having many traumas in her life, including being burned as an infant and being raped as an adult, and that her medical conditions included emphysema, irritable bowel syndrome and pain after "having her arm ripped from its socket" by a man at a party. AR 299-301.  During her examination, Plaintiff said her concentration "sucks," but she successfully counted backwards from 40. AR 300. When asked to recite 4 digits forward, she was "barely successful," and could not recite 2 digits backward. *Id.*  Dr. Felix said the "short mental status exam does show an individual who is easily panicked and does appear confused for many reasons." AR 300.  Dr. Felix specifically stated that "[i]t is difficult (especially in the absence of following reports) to know whether this client tends to dramatize." AR 301.  Yet, Dr. Felix opined that Plaintiff's physical and mental problems would "highly impact" her ability to perform simple and complex tasks and that she would be very anxious around other people. *Id.*  Dr. Felix assigned Plaintiff a GAF score of 50. *Id.*

On July 16, 2008, Farah Rana, M.D., performed a consultative physical examination of Plaintiff. AR 236-38.  Plaintiff had mild tenderness in both knees, but range of motion testing was normal. AR 237.  Plaintiff's neurological examination was intact. AR 238.  Dr. Rana opined that

3

Plaintiff could lift up to 20 pounds, stand/walk for 8 hours, sit for six hours, and perform occasional postural movements. *Id.* Dr. Rana further opined that Plaintiff "would have difficulty with frequent bending, stooping, kneeling, crouching and crawling, but can do these activities on an occasional basis." *Id.*

On August 19, 2008, Ahmed El-Sokkary, Psy.D., performed a psychological evaluation of Plaintiff. AR 251-53. Plaintiff reported that she lived alone and took care of her own personal needs, and spent most of her time attending AA meetings, visiting with her friends and being with her dog. AR 251. Plaintiff alleged that she had various body pains and symptoms of PTSD. On examination, Plaintiff was polite and cooperative, with good eye contact. AR 252. She was fully alert and oriented, and expressed a wide range of affect with an underlying depressed mood. She registered 4 out of 4 words and recalled 2 after a delay. She could repeat 6 digits forward and 3 backward, and could spell the word "world" backwards. She had coherent thought processes and normal speech. Dr. El-Sokkary diagnosed a mood disorder, not otherwise specified (NOS) with PTSD to be ruled out (R/O). Dr. El-Sokkary opined that Plaintiff could understand, remember and perform simple tasks, maintain adequate concentration, persistence and pace to do basic work, and appropriately interact with supervisors and coworkers. AR 253.

On August 20, 2008, State agency physician T. Nguyen, M.D., reviewed the record and opined that Plaintiff could perform a range of light work, lifting up to 20 pounds, standing/walking and sitting 6 hours each, with some postural limitations. AR 254-58.

On September 25, 2008, State agency psychiatrist R. Paxton, M.D., reviewed the record and opined that Plaintiff had anxiety and substance abuse disorders, but that she was not significantly limited in 18 of 20 mental work-related activities, and retained the functional capacity for simple, routine and repetitive tasks. AR 259-72.

In a November 3, 2009 decision, the ALJ found that Plaintiff was not disabled. AR 8-18. On December 30, 2009, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 4. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on January 29, 2010. AR 1-3. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

4

1   On November 22, 2010, Plaintiff filed a motion to remand under sentence 6 on the grounds that the administrative record was incomplete. (Dkt. No. 15.)  On September 28, 2012, the motion to remand was denied by the district court, which ordered Plaintiff to file her motion for summary judgment within 30 days.[2,3] (Dkt. No. 25 at 5.)

On November 19, 2012, Plaintiff filed her motion for summary judgment. (Pl.'s Mot., Dkt. No. 26.).  On December 6, 2012, Defendant filed its opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 29.)  Plaintiff did not file a reply, despite being granted an extension of time to file. (*See* Dkt. No. 31.)  Thus, the motion is fully briefed.

In July 2014, the parties consented to a magistrate judge to conduct any and all further proceedings in this case, including entry of final judgment, and the case was reassigned to the undersigned on July 8, 2014. (Dkt. No. 36.)

## II.   LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

---

[2] The Order was filed on September 28, 2012, but was not docketed on ECF, and served on the parties, until October 15, 2012.
[3] Plaintiff's motion for summary judgment incorrectly states that the presiding judge did not rule on the motion to remand prior to filing her motion for summary judgment. As this is untrue—the motion to remand was denied— the Court will not address Plaintiff's apparent request to remand in the instant motion. (*See* Pl.'s Mot. at 1.)

1   Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, she is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III.   THE ALJ'S DECISION

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the date of her application. AR 10. At step two, the ALJ found that Plaintiff's severe impairments were affective disorder, anxiety related disorder, mild osteoarthritis and torn meniscus in both knees, and substance addiction disorder. AR 10. At step three, the ALJ concluded that the Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 10-12. At step four,

the ALJ concluded that Plaintiff has the RFC to perform "at least light work" with some limitations, and is capable of engaging in "simple, repetitive tasks equating to unskilled work." AR 12-13. The ALJ found that Plaintiff is able to occasionally work as a babysitter, lives alone, cares for a dog or dogs, has no problems with personal care, prepares her own meals, engages in housework, and is able to drive and shop, which are "not the daily activities of one completely disabled as defined by the Social Security Act and regulations." AR 16.  The ALJ, after careful consideration of the evidence, found that Plaintiff's "impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these systems [were] not credible to the extent that they are inconsistent with the above residual functional capacity assessment." AR 13.  The ALJ specifically noted that given Plaintiff's allegations of totally disabling symptoms, "one might expect to see some indication in the treatment records of restrictions placed on claimant by the treating doctor." AR 16.  The ALJ stated that Plaintiff's medical records reveal little or no restrictions recommended by the treating doctor, with the exception of limitations in walking due to bilateral knee pain. *Id.*

Plaintiff was born in 1957, and was 51 years old on the date the application was filed, which is defined as an individual approaching advanced age. AR 16.  She has a high school education and is able to communicate in English. *Id.*  Transferability of job skills was is not an issue because the claimant does not have past relevant work. *Id.*  Considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs existing in significant numbers in the national economy that Plaintiff could perform.  AR 17.  Therefore, Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## IV. DISCUSSION

Plaintiff makes three arguments in her motion for summary judgment: (1) that the ALJ rejected the opinions of Plaintiff's treating sources without clear and convincing or specific and legitimate reasons; (2) that the ALJ discredited Plaintiff's testimony regarding her symptoms without clear and convincing reasons; and (3) that the ALJ erred in determining Plaintiff's residual functional capacity ("RFC"). (*See* Pl.'s Mot. at 10-13.)

1  The Court will address each argument in the order of the five-step evaluation. There is no dispute that Plaintiff is not currently engaged in a substantial gainful activity, and so the analysis proceeds to step two to determine whether she is disabled.

### A. ALJ gave proper credit to treating sources' opinion.

The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where the record contains conflicting medical evidence, the ALJ must make a credibility determination and resolve the conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence...." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citations omitted).

Psychologists and psychiatrists, in diagnosing mental illness, often make five different sub-diagnoses, on what they call "Axes." *Williamson v. Astrue*, No. EDCV 12–00364–CW, 2013 WL 141544, at *4 n. 4 (C.D. Cal. Jan. 10, 2013). Axis V measures the Global Assessment of Functioning ("GAF"). *Id.* The GAF is a scale ranging from zero to 100, used to rate social, occupational and psychological functioning on a hypothetical continuum of mental health. *Id.* The GAF score is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. *Sigmon v. Kernan*, No. CV 06–5807 AHM (JWJ), 2009 WL 1514700, at *9 n.3 (C.D. Cal. May 27, 2009). A GAF score may help an ALJ assess mental residual functional capacity, but is not raw medical data. People with a GAF score of 41 to 50 have "serious symptoms" or any serious impairment in social, occupational or school functioning. *Williamson v. Astrue*, No. EDCV 12–00364–CW, 2013 WL 141544, at *4 n.5 (C.D. Cal. Jan. 10, 2013). By contrast, a GAF score of 51 to 60 indicates only "moderate difficulty in functioning." *Atkinson v. Astrue*, No. 2:10–cv–02072–KJN, 2011 WL 4085414, at *10 (E.D. Cal. Sept. 13,

8

2011). People in that category may have flat affects, circumstantial speech, occasional panic attacks, few friends, or conflicts with coworkers. *Id.* A GAF score of 61 to 70 indicates some mild symptoms or some difficulty in social, occupational or school functioning but generally functioning well with some meaningful interpersonal relationships. *Sigmon v. Kernan*, No. CV 06–5807 AHM (JWJ), 2009 WL 1514700, at *9 n.3 (C.D. Cal. May 27, 2009).

### i. Clinical Psychologist Morton Felix, Ph.D.

Plaintiff argues that the ALJ should have adopted the opinion of examining physician Dr. Morton Felix. (Pl.'s Mot. at 10-12.) Plaintiff contends that "[t]he ALJ failed to include the entirety of the RFC determination prepared by consultative psychological examiner Dr. Felix." (Pl.'s Mot. at 10.)[4] On July 8, 2008, Dr. Felix evaluated Plaintiff at the request of the California Department of Social Services and for the purposes of establishing disability status. AR 299. Dr. Felix diagnosed Plaintiff with Depressive disorder, Post-Traumatic Stress Disorder, and a generalized anxiety disorder. AR 15, 301. Dr. Felix assigned Plaintiff a GAF score of 50, indicating moderate symptoms, and that her impairments, at present, would highly impact her ability to execute simple and complex tasks in a vocational context. AR 301.

When weighing the medical evidence as part of assessing the claimant's testimony regarding the severity of his impairments, the ALJ gave Dr. Felix's opinion less weight than other opinions because the ALJ concluded that Dr. Felix's opinion was "somewhat inconsistent with the other evidence in the record and it seems somewhat extreme, with little by way of objective clinical findings and more by way of the claimant's subjective reports." AR 15.

First, the ALJ found that Dr. Felix's opinion was dependent on Plaintiff's subjective reports. AR 15. This is sufficient reason to discount a medical opinion. Dr. Felix was clear that he did not review any previous medical records or evaluations, and suggested that Dr. Seiver and Dr. Schten be contacted to obtain further information regarding Plaintiff's physical and mental condition. AR 300. Dr. Felix noted that in the absence of those reports, "[i]t is difficult . . . to

---

[4] Plaintiff cites to page 523 of the Administrative Record, which does not exist. As such, the Court assumes that Plaintiff is citing to Exhibit 16F, which is at AR 298-302.

9

1   know whether this client tends to dramatize. . . ." AR 301.  The ALJ, however, reported that the

2   GAF of 50 is not entirely inconsistent with Dr. Felix's assessment.

3   Second, other medical evidence was not consistent with Dr. Felix's assessment.  Dr.

4   Ahmed El-Sokkary, Psy.D. opined that, "based solely on the current evaluation and from a strictly

5   cognitive and emotional standpoint," Plaintiff could understand, remember and perform simple

6   tasks, maintain a sufficient level of concentration, persistence, and pace to do basic work, and

7   appropriately interact with supervisors and coworkers. AR 15, 253.  The ALJ also referred to Dr.

8   Paxton, who concluded that Plaintiff was "capable of simple, routine, repetitive tasks." AR 15,

9   272.

10  Thus, the Court finds that the ALJ had reason to discount Dr. Felix's opinion.

11  **ii.    Psychiatrist Tamar Siever, M.D.**

12  Plaintiff contends that the ALJ failed "to address the severity of [Plaintiff]'s mental

13  impairments as found by Dr. Siever and to develop the record properly was in error." (Pl.'s Mot. at

14  11.)

15  The ALJ specifically stated that he was discounting Dr. Siever's opinion because it was

16  "[q]uite conclusory, with no explanation of the evidence upon which he relied, Dr. Siever declared

17  that the claimant was unable to work due to severe illness." AR 15. "[W]hen evaluating

18  conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is

19  brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216

20  (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir.2001)).  Plaintiff claims that Dr.

21  Siever's progress notes and treatment records were in the record. (Pl.'s Mot. at 12.)  Those records

22  included a letter to "To Whom it May Concern," expressing Dr. Siever's opinion that Plaintiff had

23  an unspecified "illness" that rendered her temporarily "unable to work for at least the next twelve

24  months." AR 157.  Whether a claimant is disabled, however, is an administrative, rather than a

25  medical, finding that is reserved for the ALJ. See 20 C.F.R. § 416.927(e); SSR 96-5p ("issues

26  [that] are not medical issues regarding the nature and severity of an individual's impairment(s) but

27  are administrative findings" include "[w]hether an individual is 'disabled' under the Act").  The

28  source of any opinion, medical or otherwise, is not entitled to "any special significance." SSR 96-

5p ("treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance"). Even though disability status is reserved for the Commissioner, and the ALJ cannot ignore an opinion from a medical source, the ALJ "must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id.* Here, as the ALJ found, there is no evidence in the record to support Dr. Siever's opinion that Plaintiff is disabled, because all of the evidence is either conclusory or based on Plaintiff's subjective complaints rather than objective medical evidence or evaluation.[5] *See* AR 172, 176-81, 196.

Plaintiff also argues that the ALJ had a duty to develop the record. (Pl.'s Mot. at 11.) An ALJ's duty to obtain "additional information is triggered only when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ did not make a finding that the report was inadequate to make a determination regarding Plaintiff's disability. Instead, the ALJ discounted Dr. Siever's opinion because it was not supported by any evidence, and he had sufficient medical evidence to support a finding that Plaintiff was not disabled. *See id.*

Moreover, the ALJ said the opinion was inconsistent with the other evidence. *See Thomas*, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."). In fact, several doctors opined that Plaintiff could perform a range of work, and the ALJ appropriately gave more weight to these consistent opinions which "supported a finding of 'not disabled'." AR 16. In addition to the opinions of Dr. El-Sokkary and Dr. Paxton discussed above, the ALJ cited to the opinions of Dr. Rana and Dr. Nguyen. Dr. Rana opined that Plaintiff could perform a range of light work. AR 14, 238. Dr. Nguyen similarly opined that Plaintiff could perform a range of light work. AR 14, 254-58.

---

[5] Plaintiff vaguely points to a psychiatric evaluation performed by Dr. Siever that was allegedly provided to her treating physician. (Pl.'s Mot. at 12.) Plaintiff, however, does not cite to it in the administrative record and there is no psychiatric evaluation contained therein. Those progress notes do note a concern that Plaintiff may be attempting to "split staff" (by seeking treatment elsewhere for Attention Deficit Disorder) to obtain stimulant medication, because Dr. Siever was prescribing non-stimulant medication due to Plaintiff's prior amphetamine abuse. AR 179.

11

Thus, the ALJ had sufficient evidence to discount Dr. Siever's opinion that Plaintiff was disabled.

### iii. Internist Dr. Erik Schten

Plaintiff appears to challenge the ALJ's evaluation of internist Dr. Schten's opinion that Plaintiff has limitations on walking due to knee pain. (Pl.'s Mot. at 12.) The ALJ did consider Plaintiff's knee injury and impending surgery. AR 14. The ALJ referred to Dr. Schten's July 2007 opinion Plaintiff "was most limited by her psychiatric disease" and deferred any limitations to Dr. Seiver. AR 14, 158, 174. The ALJ found that "the course of treatment pursued by Dr. Schten has not been consistent with what one would expect if the claimant were truly disabled." AR 14. The ALJ found that Dr. Schten's treatment was "essentially routine and conservative in nature," with the exception of the August 2009 opinion that Plaintiff was disabled, which was unsupported. AR 14, 334. The ALJ concluded that Dr. Schten's opinion regarding Plaintiff's knee pain is not inconsistent with the RFC assessment, which limited standing and walking and other physical activity. AR 13-14. Thus, the ALJ had substantial evidence to discount Dr. Schten's opinion that Plaintiff was disabled.

Accordingly, the ALJ acted in accordance with his responsibility to determine the credibility of medical evidence, and he gave specific, legitimate reasons for discrediting particular opinions.

### B. ALJ provided specific reasons for discrediting Plaintiff's testimony.

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons"

12

for the rejection. *Id.* The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints; general findings are insufficient. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Plaintiff argues that the ALJ's finding that her testimony was not credible lacked adequate support. (Pl.'s Mot. at 13.) In order to reject a claimant's subjective complaints, an ALJ must give "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

Despite Plaintiff's contentions to the contrary, the ALJ specified which parts of Plaintiff's testimony he found not credible and offered several reasons to discredit Plaintiff's testimony. First, Plaintiff's work history prior to the date she alleged she became disabled was sporadic, raising the question "whether the claimant's continuing unemployment is actually due to medical impairments." AR 16. Second, "claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor" yet the record showed "little to no restrictions." *Id.* Third, Plaintiff's ability to occasionally babysit a child for a few hours at a time, which is "quite demanding both physically and mentally," is indicative of greater functional abilities than Plaintiff alleged. *Id.* Fourth, the ALJ observed that Plaintiff lived alone and was able to care for herself, including personal care, cooking, shopping, housework, and caring for pets, which suggests she was not "completely disabled" under the Social Security Act and regulations. *Id.* Lastly, the ALJ reiterated that the majority of objective medical evidence supported a finding of "not disabled," because those opinions supported the RFC that established that Plaintiff could form a range of light work. AR 16.

Plaintiff, however, fails to address any of the ALJ's reasons for discrediting her testimony. (*See* Pl.'s Mot. at 13.) Instead, she opts to accuse the ALJ's decision of being conclusory and "consist[ing] of nothing more and is mere boilerplate without insight." *Id.* To the contrary, the ALJ provided specific reasons to discredit Plaintiff's testimony, including relying on medical evidence that undermined Plaintiff's subjective assessment of her limitations. *See Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). The Court notes that Dr. Felix, whose medical opinion Plaintiff seeks to assign more weight, was unsure whether Plaintiff tended to "dramatize," because

13

there were no medical reports or evaluations provided. Additionally, Dr. Siever's staff suspected that Plaintiff may be attempting to "split staff" by seeing other doctors to obtain additional prescription medications.

In light of the foregoing, the ALJ properly discredited Plaintiff's testimony for the reasons set forth in the decision.

### C. ALJ did not err in Plaintiff's RFC assessment.

Plaintiff generally contends that the ALJ erred in his RFC determination because he "made no limitation for working with strangers and peers." (Pl.'s Mot. at 10.) This is based on Dr. Felix's RFC assessment, which, as discussed above, was discounted despite being not "entirely inconsistent" with the ALJ's decision, because it was based on Plaintiff's subjective complaints. AR 15. As a result, the ALJ properly relied on the other medical evidence in determining Plaintiff's residual functional capacity.

### V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is DENIED, Defendant's cross-motion for summary judgment is GRANTED. The Clerk shall close the case.

IT IS SO ORDERED.

Dated: September 29, 2014

*Kandis Westmore*
KANDIS A. WESTMORE
United States Magistrate Judge